[Civ. No. 58037. Second Dist., Div. Five. July 10, 1980.]

EVAN WILLIAMS et al., Plaintiffs and Appellants, v. CHARLES H. THOMAS, Defendant and Respondent.

COUNSEL

Richard P. Hemar and Samuel W. Gordon for Plaintiffs and Appellants.

Manning & Roberts and Virgil Roberts for Defendant and Respondent.

OPINION

KAUS, P. J.—Appeal from the order granting Thomas' "Motion to Vacate Notice of Exception to Sureties and Demand for Justification."

In 1978, the Williams obtained a Nevada money judgment in the sum of $105,487.50 against Thomas. The judgment was entered in California pursuant to the sister state money judgments act (Code Civ. Proc. §§ 1710.10-1710.65.) Thomas' motion to stay enforcement of the judgment was granted pending the finality of Nevada litigation regarding the underlying judgment, on condition that Thomas file an undertaking in the amount of $140,000. (Code Civ. Proc., § 1710.50.)

On October 5, 1978, after a hearing, the court accepted an amended undertaking filed on behalf of Thomas by individual sureties Pat Benton, William Grant, James Hobley and James Taylor. The court also "approved" the justification of each of the individual sureties; however, on November 16, 1978, the court granted the Williams' motion to vacate the October 5 order and the stay of the proceedings.

On February 23, 1979, Thomas obtained a peremptory writ of mandate from Division Four of this court ordering the superior court to vacate its November 16 "order vacating stay" and requiring it to make a new order granting a stay of execution pending the final determination of the Nevada lawsuit. The stay was ordered conditioned on Thomas' providing, within 15 days, a new undertaking which met the approval of the superior court. Division Four's order further stated: "If [Thomas] desires to use the sureties who executed the undertaking for the stay heretofore granted, those sureties must execute a new confirmation of their undertaking as applicable to the continuation of the stay."

On March 9, 1979, individual sureties Benton, Taylor and Grant—but not Hobley—filed declarations of qualification as individual sureties in which they declared their respective personal net worths to be $120,000, $300,000 and $120,000. On that same date, the three sureties filed on Thomas' behalf an undertaking in the sum of $215,000.[1]

The Williams' filed a "Notice of Exception to Sureties and Demand for Justification" on March 26, 1979. On April 12 Thomas, in turn, filed a "Motion to Vacate Notice of Exception to Sureties and Demand for Justification and for Sanctions" on the ground that exception to sureties must be made "within ten days of the date that undertaking is filed"[2] and that the Williams' exception was untimely. The motion was granted on April 26. The present appeal is from the order of that day.

■ Before we may consider the Williams' arguments on the merits, we must confront Thomas' preliminary claim that the order appealed from is not appealable. We conclude that the order is clearly appealable as an "order made after judgment." (Code Civ. Proc., § 904.1, subd. (b).)

■ Witkin explains that there are three requirements which must be met for such an order to be appealable: the judgment which precedes the order must be "final" in the trial court, the appeal from the order may not present the same issues as an appeal from the judgment itself, and the order must either affect the judgment or relate to it either by enforcing it or staying its execution. (6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4091-4093.) All three requisites are present here.

■ First, once the sister state money judgment is entered, it is as "final" in the trial court as any other so-called "final judgment." The Legislature has declared that a sister state judgment which has been entered pursuant to Code of Civil Procedure section 1710.25 "shall have the same effect as a money judgment of a superior court of this state and may be enforced or satisfied in like manner." (Code Civ. Proc., § 1710.35.) While such a sister state judgment may be vacated on

---

[1]The record contains no explanation for the more than 50 percent inflation in the amount of the undertaking.

[2]The quoted language is from Thomas' motion. The language of the controlling statute is "...within ten days after notice of the filing of [the] undertaking;" as will be seen, the difference is of critical significance here.

grounds extrinsic to the merits of the underlying lawsuit (Code Civ. Proc., § 1710.40), so may any other "final" California judgment. (Code Civ. Proc., §§ 473, 663.)

Second, it is obvious that the question presented in the present appeal—the timeliness of the Williams' filing of exceptions and demand for justification by the sureties—could not have been an issue in an appeal from the judgment as entered in California. The undertaking, of course, was not filed until after the judgment was entered and, with a few exceptions not applicable here, an appellate court may not review alleged errors which occurred after the entry of the judgment being appealed. (*Solomon* v. *Solomon* (1953) 118 Cal.App.2d 149, 155 [257 P.2d 760]; *People's Home Sav. Bank* v. *Sadler* (1905) 1 Cal.App. 189, 193 [81 P. 1029]; see also *Coombs* v. *Hibberd* (1872) 45 Cal. 174, 175-176.)

Third, there can be no real debate that the order being appealed affects the stay of enforcement of the judgment. When an undertaking is excepted to, the sureties must justify within 10 days of notice of the filing of the exception; if they do not, the stay dissolves. (Code Civ. Proc., § 922.) The effect of the order below was to absolve the sureties of any obligation to justify. An order compelling sureties to justify is an appealable order after judgment. (*Holt* v. *James* (1909) 10 Cal.App. 360, 361 [101 P. 1065].) We see no reason why an order which has the opposite effect should not be appealable.

Turning to the merits of the appeal, we note that Thomas' claim that the exception was untimely is based primarily upon the language of Code of Civil Procedure section 922, which states that a party "may except to the sufficiency of the sureties at any time *within 10 days after notice of the filing of* [*the*] *undertaking;* . . ." (Italics ours.) As we have noted, the undertaking was filed on March 9, 1979. There is nothing in the record, however, which shows that notice of the filing of the undertaking was ever served on the Williams' or their counsel. The record does show that a copy of the undertaking itself was served by mail on Williams' counsel on March 9, but that act did not apprise him of the fact that the undertaking was in fact filed on that date—a fact crucial to his determination of when his time began to run.

But even if service of a copy of the undertaking were considered to be sufficient notice, the March 26 filing of the exception was timely. Had

the notice been personally served on March 9, the last day on which the exception could have been timely filed would have been March 19. (Code Civ. Proc., § 12.) However, since service was by mail, the time for filing the exception was extended five days to March 24. (Code Civ. Proc., § 1013, subd. (a).) Since March 24, 1979, was a Saturday, the filing date was extended to the following Monday, i.e., March 26. (Code Civ. Proc., §§ 12a, 13.)[3]

Finally, Thomas urges that it is implicit in the opinion of Division Four issuing the peremptory writ of mandate that there was no need for the sureties to rejustify since their previous justification had been deemed sufficient by the court below. Rejustification, he argues, would be a waste of court time. We disagree.

In the first place, since Division Four's order required a new undertaking to be filed, the implication is directly to the contrary of that contended for by Thomas. In the second place, the undertaking as to which the sureties' justification was approved was entered into by four sureties who pledged themselves jointly liable for the underlying judgment. Only three of those four have entered into the present undertaking. Whether those three can justify to the satisfaction of the court—particularly in view of the passage of time since the initial justification—remains an open question.[4]

---

[3]Thomas claims that the Williams' are not entitled to the benefit of the extra five days provided by section 1013 of the Code of Civil Procedure. He argues that the situation is similar to the setting of a demurrer for hearing under rule 202(b). Section 1013, subdivision (a) provides "if, *within a given number of days* after such service, a right may be exercised, or an act is to be done by the adverse party, the time within which such right may be exercised or act be done, is extended five days ..." (Italics added.) The reason why that provision does not apply to the setting of demurrers lies in the wording of rule 202(b) which simply states that a demurrer is to be filed with a notice of hearing "which shall specify a hearing date not less than 10 days and not more than 15 days from the filing of the demurrer..." Rule 202(b) simply does not give the recipient a particular number of days from receipt within which to exercise a right or do an act: rather it informs him that on a day certain something is about to happen.

[4]The Williams' argue that they are entitled to a reversal with a declaration that Thomas has lost his right to have his sureties justify. The point is based on the fact that section 922 of the Code of Civil Procedure demands that the sureties justify within 10 days after service of the exception and that April 12 was 17 days after March 26—2 days too late even when the 5 days given by section 1013, subdivision (a) are added.

The time limits of section 922 are not jurisdictional. To forestall further motions and cross-motions in the trial court, we hereby extend Thomas' time to have his sureties justify to and including the 15th day after the filing of the remittitur herein.

The order granting Thomas' "Motion to Vacate Notice of Exception to Sureties and Demand for Justification" is reversed.

Stephens, J., and Hastings, J., concurred.